In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1521

JASON RAHIMZADEH,

*Plaintiff-Appellant,*

*v.*

ACE AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-07056 — **Joan H. Lefkow**, *Judge.*

ARGUED JANUARY 14, 2025 — DECIDED JULY 11, 2025

Before RIPPLE, BRENNAN, and KOLAR, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jason Rahimzadeh filed an underinsured motorist ("UIM") claim with Ace American Insurance Company ("Ace"). Ace denied the claim on the ground that he did not qualify as an insured under his employer's commercial automobile insurance policy. Mr. Rahimzadeh then filed this action in Illinois state court, alleging that Ace had breached the insurance contract. After Ace removed the case to the United States District Court for the Northern District of

Illinois,[1] the district court granted Ace's motion to dismiss for failure to state a claim. For the reasons set forth in this opinion, we affirm the judgment of the district court.[2]

## I

## BACKGROUND

### A.

While riding his bicycle on September 11, 2020, Mr. Rahimzadeh was hit by a vehicle and suffered "significant, debilitating injuries."[3] Because the driver was underinsured, Mr. Rahimzadeh sought UIM coverage from his personal automobile insurance policy. He also submitted a claim for UIM coverage under his employer's commercial automobile policy.

Medtronic PLC employed Mr. Rahimzadeh and, as part of his employment, issued him a company vehicle insured by Ace. The Ace policy listed "Medtronic plc" as the named insured and included liability, uninsured motorist ("UM"), and UIM coverage.[4] Endorsement 58 of the policy recited its UM and UIM coverage and obligated Ace to "pay all sums the 'insured' [was] legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'"[5] Where, as here, the named insured was a corporation,

---

[1] The district court's diversity jurisdiction was predicated upon 28 U.S.C. § 1332(a).

[2] Our jurisdiction is secure under 28 U.S.C. § 1291.

[3] R.1-1 ¶ 3.

[4] R.12-1 at 43.

[5] *Id.* at 166.

"[a]nyone 'occupying' a covered 'auto'" was an insured for purposes of UM coverage.[6] For purposes of liability coverage, an "insured" was "[Medtronic] for any covered 'auto'" or "[a]nyone else while using with [Medtronic's] permission a covered 'auto.'"[7]

Ace denied Mr. Rahimzadeh's claim for UIM coverage. In a letter to Mr. Rahimzadeh explaining the decision, Ace maintained that his bicycle was not an "owned 'auto' as defined in the Policy," and that he was not an "insured" under the policy's UM endorsement.[8]

## B.

On September 8, 2022, Mr. Rahimzadeh filed this action against Ace in the Circuit Court of Cook County, Illinois, alleging that Ace breached its insurance contract by denying him UIM coverage.[9] Ace removed the action to the district court and then filed a motion to dismiss for failure to state a claim.

The district court granted Ace's motion. Addressing his breach of contract claim, the court determined that the insurance policy's terms were not ambiguous and that their interpretation was therefore a question of law. The court then

---

[6] *Id.* The policy defined "occupying" as "in, upon, getting in, on, out or off." *Id.* at 169.

[7] *Id.* at 60.

[8] R.1-1 ¶ 23.

[9] Mr. Rahimzadeh also alleged that Ace's coverage was illusory and that the insurer violated Section 155 of the Illinois Insurance Code with unreasonable and vexatious conduct. The district court dismissed these claims, and Mr. Rahimzadeh does not pursue them on appeal.

concluded that Mr. Rahimzadeh had failed to allege that he was "occupying" a covered vehicle, as was required for him to be an insured.[10] Turning to Mr. Rahimzadeh's contention that the occupancy requirement was unenforceable as contrary to public policy, the court considered the Illinois First District Appellate Court's decision in *Galarza v. Direct Auto Insurance Co.*, 209 N.E.3d 409 (Ill. App. Ct. 2022). In the district court's view, that case did not control the present situation because it concerned a personal automobile insurance policy's UIM coverage[11] for a family member, whereas Mr. Rahimzadeh is "the employee of a corporate named insured" seeking to recover from a commercial policy.[12] Instead, the court relied on *Stark v. Illinois Emcasco Insurance Co.*, 869 N.E.2d 957 (Ill. App. Ct. 2007), to support its conclusion that "corporate policyholders contract with insurers to protect the company, not individuals associated with the company."[13] The district court therefore held that the policy's occupancy requirement was permissible.

Mr. Rahimzadeh then filed a motion for reconsideration. He submitted that the Supreme Court of Illinois's supervening decision in *Galarza v. Direct Auto Insurance Co.*, 234 N.E.3d 75 (Ill. 2023), established that occupancy requirements are contrary to public policy. The district court denied

---

[10] *Rahimzadeh v. ACE American Ins. Co.*, No. 22-C-7056, 2023 WL 6141603, at *4 (N.D. Ill. Sept. 20, 2023).

[11] The district court mistakenly stated that *Galarza* concerned UIM coverage, when it involved UM coverage. Because the coverages are not significantly different, this lapse is not a cause for concern.

[12] *Id.*

[13] *Id.* at *5.

Mr. Rahimzadeh's motion. It noted that the Supreme Court of Illinois had distinguished *Stark* based on the distinction between personal and commercial policies. Therefore, in the court's view, *Stark* was undisturbed by *Galarza*, and Mr. Rahimzadeh was not an insured under the policy. Mr. Rahimzadeh timely appealed.

## II

## DISCUSSION

### A.

We review the district court's grant of a motion to dismiss for failure to state a claim de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1005–06 (7th Cir. 2021). "The interpretation of an insurance policy is a matter of state law." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015). The parties agree that Illinois law governs their dispute. To state a claim for breach of contract under Illinois law, the plaintiff must allege "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Sols., Inc.*, 215 N.E.3d 871, 877 (Ill. 2022).

Relying on the Supreme Court of Illinois's decision in *Galarza*, Mr. Rahimzadeh submits that UIM coverage in Medtronic's commercial automobile insurance policy is impermissibly conditioned on his occupying a covered vehicle. In his view, after *Galarza*, such an occupancy requirement is unenforceable as a matter of public policy not only in personal

policies but also in policies where the insured is a commercial entity.

We begin our analysis by stating the general principles that must guide our inquiry. In Illinois, general rules of contract interpretation apply to insurance policies. *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). Accordingly, a court's "primary function is to ascertain and give effect to the intention of the parties." *Galarza*, 234 N.E.3d at 82. Illinois courts enforce unambiguous insurance policies as written, "unless doing so would violate public policy." *Schultz v. Illinois Farmers Ins. Co.*, 930 N.E.2d 943, 948 (Ill. 2010). The state's "constitution, statutes, and judicial decisions" reflect its public policy. *Thounsavath*, 104 N.E.3d at 1244. Therefore, if the terms of an insurance contract conflict with a statute or the statute's underlying purpose, "those terms are void and unenforceable." *Id.* However, Illinois "has a long tradition of upholding the right of parties to freely contract" and "exercise[s] sparingly" the power to declare private contracts void on public policy grounds. *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 644–45 (Ill. 2011). The party seeking to invalidate an agreement on public policy grounds bears a "heavy burden" and must demonstrate that the insurance contract is "clearly contrary" to public policy or "manifestly injurious to the public welfare." *Galarza*, 234 N.E.3d at 83 (citation modified) (quoting *Rosen*, 949 N.E.2d at 645).

At issue here is Section 143a-2 of the Illinois Insurance Code, which reads, in relevant part:

> [N]o policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor

> vehicle shall be renewed or delivered … unless underinsured motorist coverage is included in such policy in an amount equal to the total amount of uninsured motorist coverage provided in that policy….

215 Ill. Comp. Stat. 5/143a-2(4). Illinois enacted this law to "place the insured in the same position he or she would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." 23 David J. Roe, *Illinois Practice Series*, *Illinois Automobile Insurance Law* § 8.18 (2024).

Attempting to satisfy his heavy burden of demonstrating a public policy violation, Mr. Rahimzadeh invites our attention to *Galarza*. In that case, a teenager riding his bicycle was struck by a hit-and-run driver. *Galarza*, 234 N.E.3d at 78. The boy's father filed a claim for UM coverage under his personal automobile insurance policy. *Id.* The insurer denied coverage, asserting that, at the time of the accident, the boy was not *occupying an insured vehicle* as the policy required. *Id.* at 79. The boy's father countered that the policy's occupancy requirement violated Section 143a of the Insurance Code.[14] Because

---

[14] Section 143a and *Galarza* pertain to UM coverage. *See* 215 Ill. Comp. Stat. 5/143a; *Galarza v. Direct Auto Ins. Co.*, 234 N.E.3d 75, 78 (Ill. 2023). Nevertheless, we find the case instructive for our analysis of UIM coverage because "under Illinois law liability, uninsured-motorist, and underinsured-motorist coverage provisions are 'inextricably linked'" and "serve the same underlying public policy: ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 646 (Ill. 2011) (quoting *Schultz v. Illinois Farmers Ins. Co.*, 930 N.E.2d 943, 951 (Ill. 2010)).

that provision only protects insured parties,[15] the court had to determine first whether the boy was an insured for purposes of liability coverage. The court held that, as a relative, he was an insured. *Id.* at 86. And, because "UM coverage 'must extend to all who are insured under the policy's liability provisions,'" the boy also qualified for UM coverage. *Id.* at 84, 86 (quoting *Thounsavath*, 104 N.E.3d at 1244).[16] Assessing Section 143a's plain language, the court concluded that "whether the injured person occupied a vehicle at the time of the accident with an uninsured vehicle is not the proper inquiry. Rather, the inquiry should be whether the person's injuries resulted 'out of the ownership, maintenance or use of a motor vehicle,' including the uninsured at-fault vehicle." *Id.* at 86 (quoting 215 Ill. Comp. Stat. 5/143a). This focus is necessary, reasoned the court, because the legislative policy animating the statute is to ensure that all persons covered by the statute be placed "'in substantially the same position he would occupy if the tortfeasor had the minimum liability insurance' required by Illinois Law." *Id.* at 83 (quoting *Thounsavath*, 104 N.E.3d at 1246). Requiring that the injured person be in a covered vehicle at the time of the accident constrains the intended scope of UM coverage under the statute and therefore violates public policy. Therefore, the court held that, as to policies issued to

---

[15] *Galarza*, 234 N.E.3d at 84.

[16] *See also Schultz*, 930 N.E.2d at 950 ("If a person constitutes an insured for purposes of liability coverage under a policy, the insurance company may not, either directly or indirectly, deny uninsured-motorist coverage to that person.").

individuals, occupancy requirements are unenforceable on public policy grounds. *See id.* at 86.[17]

Submitting that there are "fundamental differences be-tween business and personal auto policies,"[18] Ace maintains that the public policy rationale animating *Galarza* has no place in automobile policies issued to businesses. It asks that we in-stead uphold the occupancy requirement by relying on *Stark*. In that case, Fred Stark was the sole officer, director, and shareholder of a company that held a commercial automobile insurance policy. 869 N.E.2d at 959. An underinsured motor-ist hit him while he was walking in a parking lot, and he filed a claim for UIM coverage. *Id.* Illinois's First District Appellate Court affirmed summary judgment for the insurer because Stark's company—a separate legal entity from Stark—was the named insured, and Stark was not occupying a covered vehi-cle at the time of the accident as the policy required. *See id.* at 963.[19]

To resolve the present case, we must reconcile *Stark* and *Galarza*. *Stark* upheld an occupancy requirement in a

---

[17] *See also Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 591 (7th Cir. 2012) ("The rationale behind declining to require occupancy in a covered auto at the time of an accident is to protect the insured at all times against the risk of damages at the hands of underinsured motorists.").

[18] Appellee's Br. 15.

[19] *Stark* is consistent with other cases from the Illinois Appellate Courts. For example, in *Rohe ex rel. Rohe v. CNA Insurance Co.*, 726 N.E.2d 38 (Ill. App. Ct. 2000), an uninsured driver hit the plaintiff while he was skate-boarding. *Id.* at 39. He did not qualify for UM coverage under his father's corporation's business automobile insurance policy because the corpora-tion was a legally distinct entity from his father, and the plaintiff was not ( … continued)

commercial automobile policy; *Galarza* ruled that such a requirement in a personal automobile policy was impermissible because it was irreconcilable with the public policy of Illinois. In declaring void the occupancy requirement in *Galarza*, the Supreme Court of Illinois pointedly declined to overturn *Stark*. It noted that, in *Galarza*, an injured young man "claimed coverage under the automobile policy of his father." 234 N.E.3d at 85. That the court in *Galarza* chose to distinguish *Stark*, rather than overturn it, is no slip of the judicial pen. It evinces that the public policy concerns that animate commercial insurance policies are different from those that predominate in personal policies. Occupancy requirements are permissible in commercial policies but void in personal policies simply because the purposes of the two policies differ. In *Galarza*, the court focused on the injured party's familial relationship with the named insured and stressed that the Illinois statute mandating coverage for all family members could not be artificially constricted by an occupancy requirement.[20] Mr. Rahimzadeh, by contrast, is in a decidedly different situation. He is not a relative claiming coverage under his family member's personal insurance policy but rather an employee seeking coverage from his employer's commercial insurance policy. Mr. Rahimzadeh has not satisfied his heavy burden of demonstrating that the occupancy requirement clearly

---

occupying a covered vehicle at the time of the accident. *See id.* at 41, 43; *see also Econ. Preferred Ins. Co. v. Jersey Cnty. Constr., Inc.*, 615 N.E.2d 1290, 1292 (Ill. App. Ct. 1993) ("[W]here the insured is a corporation, … UM coverage does not extend to employees … *for accidents that do not involve occupancy of covered vehicles*.").

[20] *See Galarza*, 234 N.E.3d at 86 ("Accordingly, given that Cristopher qualifies as a relative under his father's Direct Auto Policy, Cristopher is an 'insured thereunder' and thus entitled to UM coverage.").

contravenes Illinois's public policy. *See id.* at 83. Because he is not an insured for purposes of liability coverage and was not occupying a covered vehicle at the time of the accident,[21] Mr. Rahimzadeh is not entitled to UIM coverage under his employer's commercial automobile insurance policy.[22]

### B.

Mr. Rahimzadeh also submits that we should certify his question of whether occupancy requirements are void as a

---

[21] At the time of the accident, Mr. Rahimzadeh was participating in Medtronic's "Healthier Together" initiative, which encouraged employees to "run, walk, or roll a 5k" during work hours. R.1-1 ¶¶ 31–32. We decline to consider whether the injury's occurring during the workday in any way affects Mr. Rahimzadeh's entitlement to coverage, given that he did not present such an argument on appeal.

[22] Although Illinois law governs the present case, we find it instructive that other states have upheld limits on liability for commercial automobile insurance policies. For example, in *Huebner v. MSI Insurance Co.*, 506 N.W.2d 438 (Iowa 1993), the Supreme Court of Iowa declined to extend UIM coverage under a business auto policy to an employee's son because he "was not a person occupying a covered auto at the time of his injury. He was a pedestrian walking alongside the road." *Id.* at 441; *see also* 9 Jordan R. Plitt et al., *Couch on Insurance* § 123:11 (3d ed. 2024) ("[E]mployees … of a corporation are not 'family members' or insureds under a policy issued to the corporation. Thus, a business automobile policy issued to the corporation does not afford … UM/UIM coverage if an employee is injured by an uninsured/underinsured vehicle while the employee is a pedestrian, and the injury occurs outside the scope of the employee's employment."). Similarly, the occupancy requirement in Medtronic's commercial policy, which we have determined does not clearly contravene Illinois's public policy, functions as a limit to Ace's liability.

matter of public policy to the Supreme Court of Illinois. Circuit Rule 52(a) reads, in relevant part:

> When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified.

The Supreme Court of Illinois permits certification when "there are involved in any proceeding before [the Seventh Circuit] questions as to the law of this State, which may be determinative of the said cause, and there are no controlling precedents in the decisions of this court." Ill. S. Ct. R. 20(a). The "most important consideration" in deciding whether to certify "is whether we find ourselves genuinely uncertain about a question of state law that is key to a correct disposition of the case." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 732 F.3d 755, 766 (7th Cir. 2013). Other factors include whether the case "concerns a matter of vital public concern," whether the issue is likely to recur, whether resolving the question will determine the case's outcome, and whether "the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *Id.*

We acknowledge that the validity of occupancy requirements is a question of state law that is outcome determinative in this case. However, we are not genuinely uncertain about

this question of state law and therefore decline to certify it to the Supreme Court of Illinois.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED